FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JAN 10 2019 ★
BROOKLYN OFFICE

DeARCY HALL, J.

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re: Application of ISRAEL ROTHBART for an Order to Conduct Discovery for Use in a Foreign Legal Proceeding Pursuant to 28 U.S.C. § 1782

Misc. Action No. MISC 19-0072

-----------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF ISRAEL ROTHBART PURSUANT TO 28 U.S.C. § 1782

Respectfully submitted,

Joseph J. Schwartz, Esq.
Law Office of Joseph J. Schwartz, P.C.
3118 Quentin Road
Brooklyn, New York 11234
Phone: (347) 566-4623
Fax: (347) 757-4166
joseph@jsalawpc.com

*Attorneys for Claimant Israel Rothbart*

TABLE OF CONTENTS

TABLE OF AUTHORITIES....ii

PRELIMINARY STATEMENT....1

FACTUAL BACKGROUND....2

Pre-Action Requests to Defendant....3

The U.K. Proceeding....5

Discovery in this District Relevant to the U.K. Proceeding....6

ARGUMENT....8

I. CLAIMANT'S APPLICATION MEETS ALL OF THE STATUTORY REQUIREMENTS FOR DISCOVERY FROM KRAUS PURSUANT TO 28 U.S.C. § 1782....8

a. Kraus Resides And Can Be Found In The Eastern District Of New York....9

b. Discovery Sought Is For Use In A Foreign Proceeding In A Foreign Tribunal....9

c. Claimant Is An "Interested Party"....10

II. THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING CLAIMANT'S APPLICATION....11

a. Kraus Is Not A Participant In The U.K. Proceeding....11

b. The U.K. Court Are Receptive To Sec. 1782 Discovery....12

c. Claimant Is Not Attempting To Circumvent Any English Proof-Gathering Restrictions....13

d. The Discovery Claimant Seeks Is Not Unduly Intrusive Or Burdensome....14

CONCLUSION....15

Case 1:19-cv-00066 Document 1-1 Filed 01/04/19 Page 3 of 19 PageID #: 5

TABLE OF AUTHORITIES

**Cases**

*Euromepa S.A.* v. *R. Esmerian, Inc.*,
51 F.3d 1095, 1097 (2d Cir. 1995) .......... 8, 9, 12, 13

*Fleischmann v. McDonald's Corp.*,
466 F. Supp. 2d 1020, 1032 (N.D.Ill. December 6, 2006) .......... 14

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
2006 WL 3844464 at *7 (S.D.N.Y. December 29, 2006). .......... 13, 14

*In re Application of Guy*,
2004 WL 1857580 at *2 (S.D.N.Y. Aug. 19, 2004) .......... 12

*In re Edelman*,
295 F.3d 171, 177 (2d Cir. 2002) .......... 9

*In re IKB Deutsche lndustriebank AG*,
2010 WL 1526070 at*8 (N.D. Ill. April 8, 2010) .......... 13, 14

*In re Imanagement Services, Ltd.*,
No. Misc. 05-89, 2005 WL 1959702, at *2 (E.D.N.Y. Aug. 16, 2005) .......... 9, 10, 11, 13

*In re Levy*,
249 F.R.D. 96, 106 (S.D.N.Y. 2008) .......... 9, 11

*In re Metallgesellschaft AG*,
121 F.3d 77, 79 (2d Cir. 1997) .......... 10, 11

*In re Servicio Pan Americano de Proteccion CA.*,
354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) .......... 11, 12

*In the Matter of the Application of Minatec Finance S.A.R.L. v. Si Group Inc.*,
2008 WL 3884374 at *4 (N.D.N.Y. Aug. 18, 2008) .......... 12, 13, 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241,261 (2004) .......... *passim*

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*,
376 F.3d 79, 83 (2d Cir. 2004) .......... 8

*South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*,

[1987] 1 A.C. 24 .......... 13

**Statutes**

28 U.S.C. § 1782 .......... *passim*

Federal Rule of Civil Procedure 26(b) .......... 9

Israel Rothbart ("Claimant") respectfully submits this memorandum of law in support of his application pursuant to 28 U.S.C. § 1782 ("Sec. 1782") for an Order directing Livi Kraus a/k/a Levi Kraus a/k/a Levi Yitzchak Kraus ("Kraus") to submit to deposition testimony and produce documents within the Eastern District of New York in aid of an ongoing foreign proceeding known as *Israel Rothbart v. Morris Rothbart (In re: Estate of Janos Rothbart Deceased")*, SUB-39329/18, High Court of Justice, Family Division, The Principal Registry, United Kingdom (the "U.K. Proceeding").

## PRELIMINARY STATEMENT

In this action, Claimant seeks to compel the production of the true last will and testament of his grandfather, Janos Rothbart (the "Deceased") which, upon information and belief, is being withheld by his uncle Morris Rothbart ("Defendant"). As set forth more fully below, Defendant has to date provided up to four alternative stories regarding the existence of a valid testamentary document controlling the Deceased's estate (the "Estate"). Despite the changing narratives from Defendant, there is one constant – Defendant continues to avoid providing Claimant with accurate information regarding the Estate and his rights as a beneficiary thereto.

At the center of this matter is Kraus, brother-in-law to Claimant. Much of the allegations asserted by Claimant stem from the information provided by Kraus upon his discussions with Defendant over the course of the past several years. Kraus has been an intermediary between the parties for several years and has stated, unequivocally, in oral and written communications that he has seen the testamentary document that Defendant denies to exist. Therefore, Kraus is perhaps the key witness that could shed light on the truth in this matter.

However, upon information and belief, likely at the behest of Defendant, Kraus is no longer willing to cooperate with Claimant in any manner regarding the Estate. Ironically, Defendant has

challenged Claimant's submission to the British court claiming that reliance on unsworn statements from Kraus is improper. As such, in light of the intended upcoming evidentiary hearing in the U.K. Proceeding, Claimant seeks to take testimony and documentary evidence from Kraus within the Eastern District of New York in order to provide a full factual record to the British courts in admissible form.

## FACTUAL BACKGROUND

The Deceased died on or about June 3, 2015 resident and domiciled in London, England. The Deceased was survived by his wife, Claimant's grandmother Esther Rothbart ("Esther Rothbart"), and by six adult children including the Defendant in the U.K. Proceedings. The Deceased was of the Orthodox Jewish faith. He emigrated to the United Kingdom in or around the 1940's and lived in North London until his death. During his lifetime, the Deceased established and maintained a successful leather and textile manufacturing business and, subsequently, a successful property business, the majority of which Claimant believe to form part of the Estate. Upon information and belief, Claimant has determined that the Estate should be worth between £25 million and £65 million. Given the untimely death of Claimant's father in January 2001, Claimant and his siblings would be direct beneficiaries of their father's share of the Estate.

In or about 2015, shortly after the Deceased's death, Claimant contacted his uncle, Joseph Rothbart, to make inquiries regarding the Estate. Joseph Rothbart informed him that the Defendant was the executor of the Estate and that all further inquiries regarding the Estate be directed to Defendant. Shortly thereafter, Claimant contacted the Defendant directly to inquire about the Estate. The Defendant responded to his inquiries with hostility and refused to provide any pertinent information regarding the Estate. The Defendant insisted that he was only willing to discuss matters of the Estate through an intermediary, namely Kraus, Claimant's brother-in-law.

Upon contacting Kraus, he informed Claimant that the Defendant had shown him the Deceased's duly executed last will and testament, which is in the form of a Hebrew will prepared in accordance with Jewish religious law (a "Tzava'ah") and dated in or around 2012 (the "Hebrew Will") and that the Hebrew Will was in the possession, custody and control of the Defendant. Kraus confirmed to Claimant that, pursuant to the provisions of the Hebrew Will, and as his father's son and heir, Claimant was named as one of the beneficiaries of the Estate.

Upon information and belief, to date no grant of probate had been applied for or issued in the British courts with regard to the Estate. Nonetheless, Claimant received several payments from Defendant by way of "interim distributions" - all the while being unaware of the contents of the Estate or any controlling testamentary documents. When such payments were made to Claimant, often Kraus would act as an intermediary for Defendant in delivering the payments or sending messages between the parties. Despite the foregoing, Defendant has refused to provide Claimant with a copy of the Hebrew Will or information regarding the value of the Estate.

**Pre-Action Requests to Defendant**

In light of the foregoing, Claimant wished to resolve this matter through the religious courts via Beth Din arbitration proceeding. The Beth Din issued a first summons on April 3, 2017, but this was ignored by the Defendant. A second summons dated May 10, 2017 was met with a fax sent by "Esther Rothbart and family" on or about May 14, 2017, stating that they would only appear for mediation before a Beth Din in London. A third and final summons dated June 29, 2017 was issued along with a letter of the same date from the Beth Din of New York stating that Claimant would be amenable to attending a mediation in London provided that the parties agree to mediate the matter before a panel of three mediators (with each side to select one mediator and the two selected mediators to select a third neutral mediator). The Beth Din demanded that a

response be received providing the Defendant's agreement and selection within 10 days. The third summons and letter were met with a letter from "Joseph Rothbart on behalf of the Rothbart family" dated July 12, 2017 stating that they would only appear before a Beth Din of their own choice in London. Given these repeated tactics of obfuscation and delay in this matter, on or about July 20, 2017 the Beth Din of New York authorized Claimant to issue proceedings before the English court (as required by Jewish religious law).

Thus, Claimant instructed counsel in London to assist him in understanding his position in relation to the Estate. Counsel wrote to the Defendant on August 25, 2017 to requested that he provide a copy of the Hebrew Will and other basic information regarding the Estate. Defendant responded by way of a letter dated September 11, 2017, in which he claimed that the Deceased had died intestate. This assertion was made after more than two years of the Defendant purporting to act as executor of the Estate pursuant to a valid will, and in direct contradiction to the information provided to Claimant by Kraus.

In a follow-up letter exchange, Defendant then wrote, on or about October 23, 2017 claiming, again in contradiction to the statements made by Kraus, that he was not in fact the executor of the Estate. The letter further directed Claimant to contact his grandmother, Esther Rothbart, the Deceased's widow, for any further questions regarding the Estate.

Accordingly, on or about November 7, 2017, counsel wrote to Esther Rothbart, informing her of the previous correspondence with the Defendant and Claimant's efforts to obtain information regarding the Estate. In response, counsel received a letter dated November 17, 2017 from DKLM Solicitors ("DKLM"), who purport to act on behalf of Esther Rothbart, enclosing a copy of a will, purportedly made by the Deceased on June 13, 1975, which purports to appoint Esther Rothbart as the sole executrix and sole beneficiary of the Estate (the "1975 Will"). There

are significant questions surrounding the existence of the 1975 Will, namely in that it was not signed by witnesses nor has it been probated through the British courts since the demise of the Deceased in 2015. The appearance of the 1975 Will is suspect given that it had not been raised in any prior correspondence with the various family members who had knowledge of these matters. Therefore, Claimant sought intervention from the U.K. courts in order to seek the truth of the questions surrounding the Estate.

**The U.K. Proceeding**

In or around December 2017, Claimant submitted an application to the Principal Probate Registry Division of London's High Court of Justice, seeking issuance of a Summons and Subpoena (the "Subpoena") to be served upon Defendant to compel the production of (1) any and all testamentary instruments prepared by the Deceased which are in his possession, custody or control; and (2) an accounting of his dealing with the estate of the Deceased. Claimant's application was supported by an Affidavit, dated December 21, 2017, detailing the factual basis for his application – much of which is based on information received from and conversations had with Kraus (Schwartz Dec. Ex. A). On or about February 28, 2018, the court granted Claimant's application without a hearing, pursuant to the approval of the court's Lord High Chancellor, and issued the Subpoena for service upon Defendant (Schwartz Dec. Ex. B.) The Subpoena was served on Defendant via personal service on or about March 12, 2018 (Schwartz Dec. Ex. C).

On or about March 26, 2018, Defendant timely responded to the Subpoena by serving an affirmation in response thereto (Schwartz Dec. Ex. D). In his affirmation, Defendant alleges that he has no knowledge of "any Will made in or around 2012" by the Deceased and that the Deceased was suffering from a diminished mental capacity at that time. *Id.* at ¶ 2. Defendant further claimed that the Deceased was only left with a nominal Estate upon his death. *Id.* at ¶ 5. Moreover,

Defendant claimed that the only testamentary document in existence is the 1975 Will prepared by the Deceased that purports to leave the entirety of the Deceased's estate to his spouse. *Id.* at ¶ 3.

Significantly, in his affirmation Defendant states that:

> "...the majority of the evidence in the Claimant's Affidavit is at best hearsay and that at no stage has he sought to adduce any evidence from Livi Kraus, who is the Claimant's brother-in-law and who I have met at many family functions. I accept we discussed many matters including my late father's estate, but at no time did, or could I have produced the alleged Will in circumstances where I know of no such Will and I fail to understand why it is that there is no direct evidence from Mr Kraus upon which he can be cross-examined." (*Id.* at ¶ 4.)

In the intervening months, Claimant continued to investigate the claims asserted by Defendant in his affirmation, including sending follow-up inquires to counsel (Schwartz Dec. Ex. F). To date, no response has been provided by counsel for Defendant. Thus, Claimant now intends to submit an application to the Principal Probate Registry Division of London's High Court of Justice for a full evidentiary hearing, including a cross-examination of Defendant, regarding the existence of the Hebrew Will or any other testamentary documents prepared by the Deceased. As such, as Defendant himself states in his affirmation, the testimony of Kraus is necessary for further prosecution of this action.

**<u>Discovery in this District Relevant to the U.K. Proceeding</u>**

As set forth in his December 2017 affidavit, Claimant has reason to believe that Kraus has first hand knowledge of the existence of the Hebrew Will prepared by the Deceased. First, Kraus traveled to London in 2015 to meet with Defendant to discuss the estate of the Deceased (Schwartz Dec. Ex. A at p. IR-1). Upon return from London, Kraus detailed his discussions with Defendant to Claimant, including the existence of the Hebrew Will. *Id.* at ¶ 8. Indeed, in November 2017 Kraus confirmed to Claimant in a text message that he personally witnessed the existence of said document (*Id.* at p. IR-20). Likewise, Defendant himself admits in his March 2018 affirmation that

he discussed the estate of the Deceased with Kraus (Schwartz Dec. Ex. D at ¶ 4). Notably, Kraus stated in subsequent text messages to Claimant that "I saw a [Hebrew Will] of 2012. I guess [Morris] has reason not to discuss that [Hebrew Will] with you." (Schwartz Dec. Ex. A at p. IR-20).

Upon review of Defendant's affirmation submitted in the U.K. Proceeding, Claimant reached out to Kraus in order to discuss the facts of this matter. In a text message dated May 31, 2018, Kraus stated, "I will not discuss this subject with you." (Schwartz Dec. Ex. E). Thus, given this statement by Kraus, it is necessary to compel discovery from Kraus in order to present the court presiding over the U.K. Proceeding with a full factual record.

Clearly, Claimant should be entitled to discovery into communications between Kraus and Defendant, or other family members, regarding the Hebrew Will, the Estate, the existence of a trust, and/or other related topics that bear upon the issues in the U.K. Proceeding. As demonstrated in the proposed subpoena submitted herewith, Claimant's requests are narrowly tailored to only encompass the issues for which Claimant has a good faith belief that Kraus is in possession of information relevant to the issues. In fact, the vast majority of discovery sought from Kraus is information that has already been disclosed to Claimant by Kraus – who now refuses to cooperate with Claimant's efforts in the U.K. Proceeding – which should be taken in admissible form. The discovery sought is intended to bolster the testimony provided by Claimant and impeach the sworn statements submitted by Defendant – who himself states that testimony from Kraus is a necessary component of the U.K. Proceeding.

## ARGUMENT

### I. CLAIMANT'S APPLICATION MEETS ALL OF THE STATUTORY REQUIREMENTS FOR DISCOVERY FROM KRAUS PURSUANT TO 28 U.S.C. § 1782

Sec. 1782 of the Judicial Code authorizes federal district courts to assist foreign litigants, and other interested parties, in gathering evidentiary materials for use in foreign legal proceedings. *See* 28 U.S.C. § 1782; *see also Euromepa S.A.* v. *R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995). The statute provides that a district court may order such discovery in response to an application by a party with an interest in a foreign legal proceeding:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court...The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.

28 U.S.C. § 1782. An order for discovery under Sec. 1782 is permitted where "(1) the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) . . . the discovery [is] for use in a proceeding before a foreign tribunal, and (3) ... the application [is] made by a foreign or international tribunal or 'any interested person.'" *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83 (2d Cir. 2004) (internal citation omitted). Claimant's application easily meets these three statutory requirements.

**a. Kraus Resides And Can Be Found In The Eastern District Of New York**

In determining the location of an individual from whom discovery is sought pursuant to Sec. 1782, courts look to the place where the individual resides or can be found. *See In re Edelman,* 295 F.3d 171, 177 (2d Cir. 2002). Kraus resides in Brooklyn, New York, which is within the Eastern District of New York, satisfying the first statutory element of Sec. 1782. (Schwartz Dec. Ex. A at ¶ 8).

**b. Discovery Sought Is For Use In A Foreign Proceeding In A Foreign Tribunal**

The deposition testimony and documents production Claimant seeks from Kraus is for use in a foreign proceeding in a foreign tribunal. The "for use in" provision is governed by the requirements in Federal Rule of Civil Procedure 26(b) and refers to discovery that is relevant to any party's claim or defense. *In re Levy,* 249 F.R.D. 96, 106 (S.D.N.Y. 2008). "Relevance as it relates to the subject matter of an action is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Id* at 106-07 (citation omitted).

The relevance requirement does not require an applicant to show that discovery is reasonably calculated to lead to evidence admissible in the foreign proceeding. *In re Imanagement Services, Ltd.,* No. Misc. 05-89, 2005 WL 1959702, at *2 (E.D.N.Y. Aug. 16, 2005) (emphasis added). Indeed, courts have emphasized that discovery sought pursuant to Sec. 1782 need not be admissible or even discoverable in the foreign or international tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241,261 (2004) ("nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there"); *Euromepa,* 51 F.3d at 1103 ("[The Second Circuit] ha[s] ruled that discoverability in the foreign jurisdiction is not a prerequisite to granting a section 1782 request for assistance"); *In re Imanagement*, 2005 WL 1959702, at

*2 ("[Section] 1782 contains no requirement that particular evidence be admissible in [the] foreign tribunal."). Moreover, in considering Sec. 1782 applications, courts have stressed the need to keep in mind the "twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Metallgesellschaft AG,* 121 F.3d 77, 79 (2d Cir. 1997) (internal quotations omitted).

The deposition testimony and documentary evidence Claimant seeks from Kraus is relevant to the claims and defenses advanced in the U.K. Proceeding and ordering Kraus to provide same will further the "twin aims" of Sec. 1782. As set forth above, Kraus has acted as an intermediary between the parties to deliver interim distribution payments from the Estate to Claimant; traveled to London in 2015 to discuss matters of the Estate at which time he purportedly witnessed the existence of the Hebrew Will; and had first hand conversation with Defendant regarding the assets of the Estate.

Moreover, as set forth above, ordering that Kraus provide such testimony and documentary evidence will aid the participants in the U.K. Proceeding by allowing them to present a full factual record regarding several issues in dispute in that proceeding. In short, the discovery Claimant seeks from Kraus is properly sought for use in the U.K. Proceeding, a traditional judicial proceeding, that falls squarely within Sec. 1782. Accordingly, Claimant's application meets the second statutory requirement, *i.e.*, that the discovery sought is for use in a foreign tribunal.

**c. Claimant Is An "Interested Party"**

Claimant is an "interested party" within the meaning of Sec. 1782. As the Supreme Court of the United States has held, litigants in the relevant foreign proceeding are "interested parties" under the statute. *Intel,* 542 U.S. at 256. In fact, as the *Intel* court noted, such litigants "may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Id.* Accordingly,

Claimant - as the Petitioner in the U.K. Proceeding - is an "interested party" within the meaning of Sec. 1782.

## II. THE DISCRETIONARY FACTORS WEIGH IN FAVOR OF GRANTING CLAIMANT'S APPLICATION

If an applicant has met Sec. 1782's statutory requirements, it is within the court's discretion to order the sought-after discovery. *Intel*, 542 U.S. at 255; *see also In re Metallgesellschaft*, 121 F.3d at 78 (citation omitted). The Court's discretion must be exercised in light of the "twin aims" of the statute described above. *Intel*, 542 U.S. at 252; *see also In re Metallgesellschaft*, 121 F.3d at 79 (citation omitted). In deciding to exercise its discretion, courts consider: "(l) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' (2) 'the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,' and (3) 'whether the § l782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States or contains 'unduly intrusive or burdensome requests.'" *In re Servicio Pan Americano de Proteccion CA*., 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (internal quotations omitted). Application of those discretionary criteria here weigh in favor of granting Claimant's application.

### a. Kraus Is Not A Participant In The U.K. Proceeding

Kraus is not a participant in the U.K. Proceeding, which weighs in favor of granting Claimant's Application. The need for Sec. 1782 discovery is more apparent when the person from whom discovery is sought is not a participant in the relevant foreign proceeding. *Intel*, 542 U.S. at 264; *see also In re Levy*, 249 F.R.D. at 107 ("[S]tatus as a non-party in the foreign action weighs in favor of granting ... application."); *In re Imanagement*, 2005 WL I 959702, at *3. This discretionary factor recognizes that "nonparticipants in [a] foreign proceeding may be outside the

foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States ... may be unattainable absent § 1782(a) aid." *In the Matter of the Application of Minatec Finance S.A.R.L. v. Si Group Inc.*, 2008 WL 3884374 at *4 (N.D.N.Y. Aug. 18, 2008) (citing *Intel*, 542 U.S. at 264). Indeed, as the Supreme Court has stressed, a primary purpose of Sec. 1782(a) is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful but ... they cannot obtain under their own laws." *Intel*, 542 U.S. at 262; *see also In re Servicio*, 354 F. Supp. 2d at 275 ("a foreign court's procedural discovery limitations ... should not prevent a district court from enabling a foreign litigant to obtain admissible evidence here pursuant to Section 1782"). In short, it is appropriate for this Court to exercise its discretion in favor of Claimant's application because Kraus is a non-party to the U.K. Proceeding who resides in the Eastern District of New York.

**b. The U.K. Court Are Receptive To Sec. 1782 Discovery**

The second discretionary factor supports Claimant's application because United Kingdom courts are receptive to Sec. 1782 discovery. As noted above, the U.K. Proceeding is currently pending in London's High Court of Justice, Family Division. The High Court of Justice is very similar to trial courts here in the United States in that they consider witness testimony and documentary evidence. *See In re Application of Guy*, 2004 WL 1857580 at *2 (S.D.N.Y. Aug. 19, 2004). Accordingly, the High Court of Justice is well-suited to receive the testimony that Claimant is seeking to obtain from Kraus via this application.

Courts customarily do not find a foreign tribunal to be unreceptive to judicial assistance from the United States, unless there is authoritative proof from the foreign tribunal that it would reject evidence obtained through Sec. 1782. *Euromepa*, 51 F.3d at 1101. Here, there is no authority suggesting that the government of the United Kingdom would be unreceptive to discovery obtained through a Sec. 1782 application. *See, e.g., In re Guy*, 2004 WL 1857580 at *2 (finding no reason to believe that "the government of the United Kingdom would disfavor granting Applicants relief

under § 1782"); *In re IKB Deutsche Industriebank AG*, 2010 WL 1526070 at*8 (N.D. Ill. April 8, 2010) (finding that the English court would be receptive to the documents and deposition testimony sought via Sec. 1782 application). The House of Lords, the then highest court of the United Kingdom, declared that even "nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782." *Intel*, 542 U.S. at 262 (citing *South Carolina Ins. Co. v. Assurantie Maatschappij "De Zeven Provincien" N.V.*, [1987] 1 A.C. 24). Simply put, because the United Kingdom is receptive to judicial assistance from the United States under Sec.1782, the second discretionary factor weighs in Claimant's favor as well.[1]

**c. Claimant Is Not Attempting To Circumvent Any English Proof-Gathering Restrictions**

The third discretionary factor requires courts to consider whether an applicant's Sec. 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies. *Minatec*, 2008 WL 3884374, at *8. Absent bad faith on the part of a Sec. 1782 applicant, courts will not weigh this factor against granting the discovery sought. *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464 at *7 (S.D.N.Y. December 29, 2006). Moreover, litigants are not required to seek discovery through the foreign tribunal prior to seeking it from the district court. *Id.* (*citing Euromepa*, 51 F.3d at 1098). The English court presiding over the U.K. Proceeding has taken no action to preclude Claimant from seeking testimony from Kraus. Moreover, Claimant was not required to seek such discovery in England

---

[1] Moreover, "[c]ourts have determined that the receptivity of a foreign court to U.S. federal judicial assistance may be inferred from the existence of treaties that facilitate cooperation between the U.S. federal judiciary and the foreign jurisdiction." *In re Imanagement*, 2006 WL 547949, at *4 (citation omitted). Thus, in *Imanagement*, the court stressed that Russia and the United States were parties to the Hague Evidence Convention in support of its finding that the Russian courts likely would be receptive to judicial assistance pursuant to Sec. 1782. *Id.* Here, likewise, the United Kingdom and United States are both parties to the Hague Evidence Convention, further supporting the receptivity of the United Kingdom's courts to Sec. 1782 discovery.

before making the instant application. And as noted *supra*, the English courts are receptive to Sec. 1782 discovery. In sum, the instant application is not an attempt by Claimant to circumvent English discovery restrictions. *See In re IKB Deutsche Industiebank AG*, 2010 WL 1526070 at *3-4 (holding that IKB's Section 1782 application for Sec. 1782 discovery pertaining to an action in the United Kingdom "cannot be said [to be] an attempt to circumvent English proof-gathering restrictions"). Accordingly, the third discretionary factor favors Claimant as well.

**d. The Discovery Claimant Seeks Is Not Unduly Intrusive Or Burdensome**

The deposition testimony and documentary evidence sought from Kraus is not unduly intrusive or burdensome. "This factor directs the court to look at the requests in the aggregate to decide whether they are unduly intrusive or burdensome." *Fleischmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1032 (N.D.Ill. December 6, 2006) (emphasis added). Courts simply look to whether the requests are "sufficiently tailored to the litigation issues for which production is sought." *In re Gemeinshcaftspraxis*, 2006 WL 3844464 at *8; *see also Minatec,* 2008 WL 3884374 at *8 (requests for materials under Sec. 1782 not unduly intrusive or burdensome as they were "specifically and narrowly tailored to both [relevant] issues…"). The testimony and documentary evidence Claimant seeks, as discussed *supra*, is relevant to the key issues in the U.K. Proceeding – namely, the existence of the Hebrew Will prepared by the Deceased in or around 2012. As explained in detail above, Claimant seeks evidence from Kraus as to his knowledge of or communications regarding the Estate of the Deceased, the existence of any testamentary documents, the existence of any trusts created to which Claimant is a beneficiary, and/or any assets held by the Estate of the Deceased.

Moreover, the discovery sought is limited to testimony and documents from approximately a three-and-a-half-year period (June 2015 through present) during which Kraus has indicated he

took part in discussions regarding the Estate. (Schwartz Dec. at Exh. H). Claimant's application, therefore, is narrowly tailored to the litigation issues for which discovery is sought and does not impose too great a burden upon Kraus. Accordingly, the third discretionary factor weighs in Claimant's favor as well.

For all of the reasons set forth above, Claimant's Sec. 1782 application satisfies both the relevant statutory and discretionary factors and should be granted.

**CONCLUSION**

For the foregoing reasons, Claimant respectfully requests that this Court grant his application and enter the proposed order submitted herewith directing Kraus to submit to deposition testimony and produce documents for use in the U.K. Proceeding, as set forth in the accompanying subpoena.

DATED: Brooklyn, New York
January 4, 2019

Respectfully submitted,

Law Office of Joseph J. Schwartz, P.C.

By: Joseph J. Schwartz, Esq.
3118 Quentin Road
Brooklyn, New York 11234
Phone: 347-566-4623
Fax: 347-757-4166
Email: joseph@jsalawpc.com

*Counsel for Claimant Israel Rothbart*